UNITED STATES *v.* COMYNS ET AL.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WASHINGTON.

No. 235.    Argued November 4, 5, 1918.—Decided January 7, 1919.

A bill of particulars supplementing an indictment is no part of the record for the purpose of deciding a demurrer.

An indictment alleged a scheme to defraud divers persons, through use of the mails, by representing that certain land could be purchased by them under the Timber & Stone Act for less than its value, and that defendants would secure it for them in return for fees part payable in advance, and would refund such advance payments in case of non-success, whereas the defendants well knew they could not carry out the agreement, but intended to secure the advance payments and to appropriate them to their own use.

*Held:* (1) That a decision sustaining a demurrer was based upon a con-

struction of § 215 of the Criminal Code, and was reviewable under the Criminal Appeals Act.

(2) That the indictment charged a "scheme or artifice to defraud," etc., within the meaning of said § 215.

Reversed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Kearful* for the United States.

*Mr. Charles A. Keigwin*, with whom *Mr. William R. Andrews* was on the briefs, for defendants in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

This is a review under the Criminal Appeals Act (March 2, 1907, c. 2564, 34 Stat. 1246), of a judgment of the District Court sustaining a demurrer to an indictment found under § 215 of the Criminal Code (Act of March 4, 1909, c. 321, 35 Stat. 1088, 1130).

That section provides: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter . . . in any post-office, or station thereof, . . . to be sent or delivered by the post-office establishment of the United States . . . shall be fined, . . . " etc.

The indictment contains four counts, but a recital of the first will suffice, since the others adopt by reference that part of its averments upon which is raised the question we have to determine. Omitting formal matters, that count recites that Comyns and Byron had devised a scheme and artifice to defraud nine persons named and

divers other persons to the grand jurors unknown, that is to say, to obtain from them and each of them their moneys and property by means of divers false and fraudulent pretenses and representations and to induce the victims to give to the defendants and each of them such moneys and property, with the intent on the part of the defendants and each of them to convert the same to their own use, which scheme was as follows: that defendants should represent that Comyns was a lawyer, admitted to practice before the United States Land Office, and that Byron was a locator, "and that they could locate said parties and secure for them the preference right to purchase from the United States of America under the Timber and Stone Act of June 3, 1878 [20 Stat. 89, c. 151], certain land within the Western District of Washington for the sum of $2.50 per acre, by filing an application to purchase under said act, and that the said property was worth more than that sum"; and that they would agree with the parties to be defrauded that they would charge each of them a fee for locating them and securing for them the title to said land, a part of the fee, called the initial fee, to be paid at the time of making the agreement, and the balance when title to the land was secured, "and that if said parties to be defrauded failed to get title to said land, then the said defendants and each of them would refund to said parties to be defrauded the amount of the fee already so paid to said defendants"; whereas, as defendants and each of them knew, defendants could not locate said parties and could not secure for them the preference right to purchase the land mentioned for $2.50 per acre by filing said application; "and the agreement, as to the land, to be performed in consideration of the payment of said fee was for the purpose of securing the payment of said initial fee and for the purpose of delaying the said parties to be defrauded from demanding the repayment of said initial fee and for the purpose of preventing said

parties to be defrauded from discovering the fact that they had been defrauded and disclosing said fact to others, and said defendants and each of them intended to appropriate to their own use and the use of each of said defendants said initial fee, and did not intend to refund said initial fee or any part thereof if said parties to be defrauded failed to get title to said land in accordance with said agreement." Then follows an averment that defendants made use of the mails for the purpose of executing the scheme by causing a letter inclosing a timber and stone application to be sent by mail to the Register of the Land Office.

At first the demurrer was overruled by the District Court, but at the same time it was ordered that the Government should furnish a bill of particulars "stating the reason why the land in question could not be secured by the applicants." A bill of particulars was filed setting up, in brief, that the lands could not be secured under the Timber and Stone Act (a) because they were covered by a list of selections made by the State of Washington in lieu of school sections 16 and 36; and (b) because the statements to be made in the application as to the character of the land were to be made on information and belief, and not from the applicant's personal knowledge after examination of the land as required by the rules of the General Land Office. The defendants moved to strike out the bill of particulars, and this was treated by the District Court as a petition for a rehearing of the demurrer to the indictment as amplified by the bill of particulars; and thereupon the demurrer was sustained.

Notwithstanding a contention to the contrary, it seems to us that the decision was based upon a construction of § 215 of the Criminal Code, and hence that we have jurisdiction under the Criminal Appeals Act. *United States* v. *Patten*, 226 U. S. 525, 535; *United States* v. *Nixon*, 235 U. S. 231, 235.

In reviewing the judgment we shall disregard the bill of particulars, since this forms no part of the record for the purposes of the demurrer. *Dunlop* v. *United States,* 165 U. S. 486, 491.

In brief, the indictment avers that the scheme of defendants was to induce their intended victims to part with their money by representing to them that certain land (not described except generally as being located in the Western District of Washington) could be purchased from the United States under the Timber and Stone Act for less than its real value if the victims would employ defendants to secure such land and would pay a part of the proposed fee in advance; the defendants agreeing at the same time that in case of non-success the money thus prepaid would be refunded; whereas in truth, as defendants well knew, for some reason not specified they could not carry out the agreement, and the purpose of making it was to secure the payment of the initial fee by the intended victims, which defendants intended to appropriate to their own use and did not intend to refund in case of a failure to secure title in accordance with the agreement.

In our opinion such a scheme is a "scheme or artifice to defraud . . . by means of false or fraudulent pretenses, representations, or promises" within the meaning of § 215 of the Criminal Code. To use the mails in order to carry out a scheme for getting money by the making of promises or agreements which, whether known to be impossible of performance or not, there is no intention to perform, is a forbidden use of the facilities of the post office department. *Durland* v. *United States,* 161 U. S. 306, 313. The District Court erred in holding otherwise, and its judgment is

*Reversed.*